39924



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
"IN ADMIRALTY"

FT. LAUDERDALE DIVISION

RANDALL A. BONO, Trustee U/A dated
May 8, 1995,

     Plaintiff,

vs.

AMERICAN EAGLE FLEET LEASING,
INCORPORATED, A Florida Corporation;
AMERICAN FLEET LEASING
INCORPORATED, A Florida Corporation;
COIN CASTLE CASINO LINES, INC. A
Florida Corporation; ALBERT LAGANO,
individually and GARY SMITH, a/k/a
THOMAS O'DONNELL, individually,

     Defendants.

_____/

FILED by _____ D.C.
INTAKE

FEB 12 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

## COMPLAINT

    COMES NOW, the Plaintiff, RANDALL A. BONO, Trustee U/A dated May 8, 1995

("PLAINTIFF") by and through his undersigned counsel, and files this Complaint for damages resulting

from a breach of the Charter Party Agreement By AMERICAN EAGLE FLEET LEASING, INC.

("AMERICAN EAGLE") and/or AMERICAN FLEET LEASING, INC. ("AMERICAN FLEET"),

COIN CASTLE CASINO LINES, INC. ("COIN CASTLE"), and against ALBERT LAGANO



("LAGANO") and GARY SMITH ("SMITH"), a/k/a THOMAS O'DONNELL, each individually as guarantors for AMERICAN EAGLE, AMERICAN FLEET and/or COIN CASTLE under the Charter Party Agreement and states as follows:

### JURISDICTION AND PARTIES

1.      This is a case of Admiralty and Maritime Jurisdiction as hereinafter more fully appears and the Plaintiff's claim is in Admiralty and Maritime pursuant to 28 U.S.C. § 1333 (2006) and within the meaning of Fed.R.Civ.P. Rule 9(h)(2006).

2.      The Plaintiff is an individual *sui juris* in all respects, and one hundred (100%) percent owner of the *M/V Lady Luck*, Official Number: 507259. A copy of the vessel's document showing ownership to the Plaintiff is attached hereto and marked as Exhibit "A".

3.      The Defendants AMERICAN EAGLE, and/or AMERICAN FLEET, at all times material hereto, was/were the Charterer of the *M/V Lady Luck* per the terms of a Bareboat Charter Party entered into between the Plaintiff and AMERICAN EAGLE and/or AMERICAN FLEET, a copy of the Charter and amendment thereto is attached hereto and marked Exhibit "B". At all times material hereto AMERICAN EAGLE, and/or AMERICAN FLEET was/were doing business in Palm Beach County and/or Broward County, Florida.

4.      COIN CASTLE is a Florida Corporation which sub-chartered the *M/V Lady Luck* from AMERICAN EAGLE and/or AMERICAN FLEET and/or had possession of the *M/V Lady Luck* with the consent of AMERICAN EAGLE and/or AMERICAN FLEET and at all times material hereto COIN CASTLE was doing business in Palm Beach County and/or Broward County, Florida.

5.      LAGANO, individually, is an attorney licensed to practiced law in the State of Florida,

with offices at 551 S. Apollo Blvd., Ste. 103, Melborne, FL 32901, who, at all times material hereto, acted

on behalf of the aforementioned corporate Defendants and did give and execute an Individual Guarantee,

a copy of which is attached hereto and marked Exhibit "C", guaranteeing the terms and conditions of the

aforementioned Charter Party and amendment thereto and, agreeing to venue and jurisdiction in the United

States District Court for the Southern District of Florida in the event Plaintiff found it necessary to take

action on said guarantee.

6.      SMITH, a/k/a THOMAS O'DONNELL, at all times material hereto was an individual

acting on behalf of the aforementioned corporate Defendants, and at all times material hereto, doing

business in Palm Beach County and/or Broward County, Florida. SMITH, a/k/a THOMAS

O'DONNELL, did individually guarantee the performance of the terms and conditions of the

aforementioned Charter and amendment thereto, a copy of which Individual Guarantee is attached hereto

and marked as Exhibit "D", and did agree to venue and jurisdiction in the United States District Court for

the Southern District of Florida in the event the Plaintiff herein found it necessary to take legal action upon

such guarantee.

7.      Venue is proper in this Jurisdiction and Division as per the terms of the guarantee

agreements attached hereto as Exhibits C and D, respectively. Additionally, the Charter Agreement was

executed in Broward County and relevant terms and provisions of the Charter Agreement, as more fully

described in this Complaint below, required performance in Broward County, Florida. Said terms and

provisions were breached by the defendants.

## FACTS

8.      On or about July 30, 2003, while the *M/V Lady Luck* was situated in Broward

County, Florida, AMERICAN EAGLE and/or AMERICAN FLEET through the efforts of LAGANO and SMITH, a/k/a THOMAS O'DONNELL, did enter into a Bareboat Charter Party and Option to Purchase, Exhibit "B", which provided for charterhire in the amount of $49,000.00 per month for five consecutive months. The Charter also gave the charterer the option to purchase the *M/V Lady Luck*, upon the payment of all charterhire and monies due under the Charter Party, for the sum of $25,000.00. Additionally, the Charter provided that neither the charterer, the Master of the vessel, nor any other person "has or shall have the right, power or authority to create, incur or permit to be placed or imposed upon the vessel or her freights, profits or hire, any liens whatsoever". Charterer further agreed, at charter's expense, to protect, save harmless and indemnify the owner from and against all liens of any nature on the vessel; finally, the Charter provided that, in the event of damage to the vessel, Charterer shall arrange for repairs of such damage and shall pay the costs thereof and all other expenses incidental thereto.

9.    In addition, the Charter required that the *M/V Lady Luck* be returned to Broward County, Florida at the Charterer's expense at the conclusion of the Charter's term or in the event of a breach of the Charter, in the event that the Charterer did not exercise its option to purchase the *M/V Lady Luck*.

10.    Because the Plaintiff was unwilling to execute the Charter based upon the credit of AMERICAN EAGLE and/or AMERICAN FLEET alone, both SMITH, a/k/a THOMAS O'DONNELL, a principal in AMERICAN EAGLE and/or AMERICAN FLEET and LAGANO, an attorney, did give Individual Guarantees, *see* Exhibits "C" and "D", specifically rendering themselves individually liable in the event of any default or breach of the Charter Party.

11.    The *M/V Lady Luck* was delivered over to Defendants in Broward County, Florida

and put into service by AMERICAN EAGLE and/or AMERICAN FLEET.

12.    Subsequently, an addendum to Bareboat Charter Party and the option to purchase was executed by the parties in April of 2005, a copy of which addendum is attached hereto and marked Exhibit "B1". The addendum provided for, amongst other things, for the payment of the sum of Seventy-five Thousand Dollars ($75,000.00), with charterhire being reduced to $18,500.00 per each month, continuing from May 31, 2005 to October 31, 2005.  The option to purchase the vessel was reduced from $25,000.00 to $15,000.00.   COIN CASTLE CASINO LINES executed the addendum and acknowledged itself as co-charter with AMERICAN FLEET LEASE, INC.  Albert S. Lagano executed the addendum, individually and as President of AMERICAN EAGLE FLEET LEASE, INC., THOMAS O'DONNELL executed the addendum individually and as Vice-President of COIN CASINO LINES , INC.

13.    AMERICAN EAGLE and/or AMERICAN FLEET and/or COIN CASTLE did breach the aforementioned Charter and addendum in that:

a.    Although AMERICAN EAGLE and/or AMERICAN FLEET and/or COIN CASTLE made some of the charter payments, it failed or refused to make all the scheduled charterhire payments as required by the terms of the charter and addendum, leaving $37,000.00 due and owing to Plaintiff as unpaid charterhire, plus attorneys fees and costs.

b.    While in the possession of the charterer, the charterer did permit the MV *Lady Luck* to become damaged and stranded, resulting in the total destruction of said vessel, which now rests high and dry in the shallow waters

inside the Florida Keys National Marine Sanctuary. The top deck of the vessel has been lost and otherwise damaged, the vessel having been looted and stripped. Further, the cost of salvaging the vessel exceeds the value of the vessel in its damaged condition.

c.      At all times material hereto, under the terms of the charter and the addendum thereto, the Defendants were to provide hull insurance on the MV *Lady Luck* in the amount of $600,000.00, the Plaintiff to be an additional insured thereunder. Defendants breached this provision with the result that no insurance exists for the benefit of the Plaintiff, covering the Plaintiff for the loss of his vessel or the cost of salvaging same.

d.      Defendants never executed the option to purchase the vessel from Plaintiff; have abandoned the vessel in the Florida Keys National Marine Sanctuary, ("FKNMS")being unable and/or unwilling to return said vessel to Plaintiff at National Liquidators in Ft. Lauderdale, Florida, as required by the terms of the charter.

e.      More particularly, the Defendants AMERICAN EAGLE and/or AMERICAN FLEET and/or COIN CASTLE, and/or the individual guarantors, Lagano and/or O'Donald, have failed or refused to undertake the salvage efforts of the MV *Lady Luck*.

f       COIN CASTLE was notified by the National Oceanographic and Aerospace Administration ("NOAA"), the agency or department of the Government of the

United States charged with overseeing the FKNMS that it was to prepare a

salvage plan for NOAA's approval.

g.     On information and belief, AMERICAN EAGLE and/or AMERICAN FLEET

and/or COIN CASTLE failed or refused to respond to NOAA's request for

modifications to the salvage plan.

h.     As a result of AMERICAN EAGLE and/or AMERICAN FLEET and/or

COIN CASTLE's failure or refusal to respond to NOAA, NOAA contacted

the Plaintiff indicating it would hold the Plaintiff responsible for the costs of

salvaging the MV *Lady Luck.*

## COUNT I
## BREACH OF CHARTER PARTY

14     Plaintiff herein adopts and realleges paragraphs one through Thirteen above, as

if set forth *in haec verba* herein.

15.    At all times material hereto Charterer of the *M/V Lady Luck,* AMERICAN

EAGLE and/or AMERICAN FLEET, and the subcharterer or operator in possession with permission

of the Charterer, COIN CASTLE did breach the aforementioned Charter Party in failing to pay earned

Charterhire; in damaging the vessel; in permitting liens to be incurred against the vessel; in failing to

return said vessel to the premises of National Liquidators, Broward County, Florida at the conclusion

of the charter; in failing to secure the vessel while in the defendant(s) possession or control; and in failing

or refusing to undertake salvage efforts of the vessel in the FKNMS.

16.    As a result of the aforementioned breaches, the plaintiff has suffered and will continue

to suffer damages of a continuing nature, including but not limited to:

      a.      lost charterhire and attorney's fees due and owing under the Charter

      b.      Loss of the *M/V Lady Luck*, which was severely and irreparably damaged in the FKNMS, equal to the amount of the actual cash value of the vessel prior to the loss and/or the sum of $600,.000.00, the agreed upon value of the fessel for insurance purposes.

      c.      Damages incurred in salvage efforts that have been or may be undertaken by NOAA to remove the *M/V Lady Luck* from the FKNMS, for which NOAA seeks reimbursement from Plaintiff.

17.      As a result of the defendants breaches of the Charter, plaintiff has been forced to retain undersigned counsel and incur significant attorney's fees and costs in enforcing the plaintiff's rights under the Charter.

WHEREFORE, the Plaintiff herein sues AMERICAN EAGLE FLEET LEASING INCORPORATED, and/or AMERICAN FLEET LEASING INCORPORATED and/or COIN CASTLE CASINO LINES, INC., for damages resulting from the defendants' breach of the Charter, plus interest, attorneys fees; the amount of valid maritime liens asserted by third parties against the *M/V Lady Luck* and the cost of defense thereof, and other costs to be awarded by this Court.

## COUNT II

18.      The Plaintiff adopts and re-alleges paragraph one through thirteen, as if set forth *in haec verba*.

19. Defendants LAGANO and SMITH, a/k/a THOMAS O'DONNELL,. did execute Exhibits

"B1" and "D" individually guaranteeing the performance of the terms and conditions of said Charter Party.

20.    The Charterer and/or Sub-charterer or operator of the *M/V Lady Luck* in possession with permission of the Charterer AMERICAN EAGLE and/or AMERICAN FLEET has breached the terms of the Charter Party, for unpaid charterhire and attorneys fees; maritime liens incurred by Charterer; and the failure to return the vessel to National Liquidators, Broward County, Florida, resulting loss of the vessel, salvage expenses and/or fines that have been or may be incurred by Plaintiff, for failing to remove the vessel from the FKNMS.

21.    As a result of AMERICAN EAGLE and/or AMERICAN FLEET and/or COIN CASTLE's breaches of the Charter, plaintiff has been forced to retain undersigned counsel and incur significant attorney's fees and costs in enforcing the plaintiff's rights under the Charter.

WHEREFORE, the Plaintiff demands Judgment against ALBERT LAGANO and GARY SMITH, a/k/a THOMAS O'DONNELL, individually and/or jointly upon their individual guarantees for the damages incurred as a result of AMERICAN EAGLE and/or AMERICAN FLEET and/or COIN CASTLE's breach of the Charter, plus interest and attorneys fees; the amount of valid maritime liens asserted against The *M/V Lady Luck* and the cost of defense thereto, and other costs to be awarded by this Court.

Respectfully submitted this 31st day of January, 2007.

> LANE, REESE, AULICK, SUMMERS &
> ENNIS, P.A.
> ATTORNEY FOR Plaintiff
> 2600 Douglas Road
> Douglas Centre, Suite 304
> Coral Gables, FL  33134
> (305) 444-4418

By: _____

    John J. Cavo

    Florida Bar No. 0462764

    jcavo@florida-trial-attorneys.com

    George O. Mitchell Esq.

    Florida Bar No. 055802

# Coast Guard Vessel Documentation

**Data found in current database.**

| | | | |
|---|---|---|---|
| Vessel Name: | **LADY LUCK** | USCG Doc. No.: | **507259** |
| Vessel Service: | PASSENGER (MORE THAN 6) | IMO Number: | * |
| Trade Indicator: | Coastwise Unrestricted | Call Sign: | WDB5388 |
| Hull Material: | STEEL | Hull Number: | FI-126 |
| Shipyard and Address: | * | Year Built: | 1967 |
| Hullyard and Address: | * WARREN RI | Length (ft.): | 77.9 |
| Hailing Port: | MIAMI | Hull Depth (ft.): | 8 |
| Owner: | RANDALL A BONO, TRUSTEE U/A/ DATED 5/8/95 U/A DTD 5/8/95 8499 TAMIAMI TRAIL NO 1 SARASOTA, FL 34238 | Hull Breadth (ft.): | 27.9 |
| | | Gross Tonnage: | 92 |
| | | Net Tonnage: | 63 |
| Documentation Issuance Date: | October 06, 2003 | Documentation Expiration Date: | October 31, 2004 |
| **Previous Vessel Names:** | THE DIXIE DUCK MR. LUCKY | **Previous Vessel Owners:** | LUCKY MARITIME INC |

*Return to Vessel by CG Doc. Number Query Page*

*Go to Vessel by Name Query Page*



08-18-03  11:08   From-LANE REESE AULICK SUMMER FIELD PA        3054445504        T-108   P.02   F-280

Jul 18 03 05:08p        coastal marine                   713 532 2618              P.2

JUL-18-2003 08:42AM  FROM-                                    T-788   P.002   F-873

## BAREBOAT CHARTER PARTY AND OPTION TO PURCHASE

BAREBOAT CHARTER PARTY, dated as of the _____ day of _____, 2003, between RANDALL A. BONO, Trustee UA dated May, 1995, [hereinafter called Owner], and American Fleet Leasing Incorporated, a New York Corporation, [hereinafter called Charterer]:

1.    **DEMISE**; upon the terms and conditions of this charter, Owner agrees to let and demise and Charterer agrees to hire the following vessel;

|   |   |   |
|---|---|---|
| a) | Vessel name: | LADY LUCK |
| b) | Vessel service: | USCG Doc. No. : 507259 |
| c) | Hull Number: | XI-126 |
| d) | Year Build: | 1967 |
| e) | Length (feet): | 77.9 |
| f) | Hull Depth (feet): | 8 |
| g) | Hull Breadth (feet): | 27.9 |
| h) | Hull Material: | steel |
| i) | Gross Tonnage: | 92 |
| j) | Net Tonnage: | 63 |

2.    **WARRANTIES**: The parties acknowledge that for the last year this vessel has been under arrest and/or laid up and not in service. Accordingly, the vessel is being chartered as is, where is, with all faults. The Owner makes no warranties except that the Owner has good and marketable title to said vessel and is authorized as the vessel Owner to enter into this Charter.

3.    **DELIVERY**: The vessel shall be delivered where she presently lies, at the premises of National Liquidators, 1915 S.W. 21st Avenue, Ft. Lauderdale, Florida. Accrued doc charges in the amount of $16,343.90 are to be divided between the Charterer and Owner, with Charterer paying $12,000 and the Owner paying the balance.

4.    **CHARTER HIRE**; With the execution of this Charter Party, Charterer shall furnish Owner with a non-refundable deposit of $75,000. The aforementioned sum, together with five consecutive monthly payments of $45,000 each, shall constitute the Charter Hire. The first monthly payment shall be due thirty days from the date the Charterer takes possession of the vessel. Thereafter, the following four consecutive monthly



EXHIBIT

B

08-18-03  11:08   From-LANE REESE AULICK SUMMER FIELD PA        3054445504         T-108  P.03/12  F-790

JUL 18 03 05:08p      coastal marine               713 532 2618                    P. 3

JUL-18-2003  09:42AM  FROM-

                                                                   T-768  P 003/018  F-873

payments shall be made on the same date of the month as the initial monthly payment. "Payment" under this Charter Party shall be in U.S. Dollars either by wire transfer to the account of Owner or delivered to Owner via certified check, in the appropriate amount, on or before the date the payment is due. Failure to timely make said payment will constitute a "default" under this agreement.

5.    USE AND OPERATION, ETC.: Charterer shall have full use and exclusive possession and control of the Vessel and shall man, victual, supply, equip, upkeep, navigate and operate the Vessel at its expense or by its own procurement throughout the charter period. The master, officers and crew of the Vessel shall be engaged and employed by Charterer and shall remain Charterer's servants, and shall be under its direct control and direction. Charterer will permit the Vessel to be operated only in the Coastwise Trade.

6.    DOCUMENTATION. Owner shall document the Vessel under the laws of the United States of America and throughout the charter period shall maintain such documentation under such laws. Charterer shall execute such documents, take such action and furnish such information as Owner may reasonably request to enable Owner so to document the Vessel and maintain such documents, take such action and furnish such information as Owner may reasonably request to enable Owner so to document the Vessel and maintain such documentation. Neither Owner nor Charterer shall permit the Vessel to be documented or operated under any flag other than that of the United States of America nor do or permit anything to be done which might injuriously affect the documentation of the Vessel under the laws and regulations of the United States of America.

7.    MAINTENANCE, CERTIFICATION, REPAIR AND INSPECTION:

    (a)    During the charter period Charterer, at its expense shall at all times maintain, service and preserve the Vessel in good running order and repair, in accordance with good commercial maintenance practices so that the Vessel shall be, insofar as due diligence can make it so, tight, staunch, strong and well and sufficiently tackled, peeled, furnished, equipped and in every respect seaworthy and in good operating condition.

    (b)    The Vessel shall be repaired, over hauled, dry docked, cleaned and painted by Charterer at its expense whenever necessary to maintain and preserve the Vessel in accordance with the immediately preceding paragraph. Charterer shall keep the Vessel in such condition as would entitle them to the highest classification and rating for Vessel of the same age and type and keep the Vessel in such condition as would enable them to pass such inspection as may be required to be maintained by Charterer hereunder and to pass such inspection as may be required by law.

    (c)    Charterer further agrees, that due to the uniqueness of the type of Vessel, that

in the event that Owner requests, Charterer will be required to purchase from Owner all unique items including gambling equipment.

(d)   In the event any casualty, accident or damage to the Vessel shall occur in excess of $5,000, Charterer shall forthwith give Owner full information regarding same.

8.   LAWS, TAXES, ETC. Charterer at its expense shall cause the Vessel at all times to comply with all applicable rules, laws and regulations and shall have on board, when required thereby, valid certificates showing such compliance. Charterer shall pay and discharge, all taxes, assessments, excises, levies, duties, fees, fines, penalties and other governmental charges lawfully imposed upon it.

9.   LIENS. Neither Charterer, the master of the vessel, nor any other person has or shall have any right, power or authority to create, incur or permit to be placed or imposed upon the Vessel or her freights, profits or hire, any lien whatsoever.

Charterer shall at all times carry a true copy of this Charter and any amendments or assignments thereof, as furnished by Owner, aboard the Vessel with its documents and shall exhibit the same to any person having business with the Vessel which might give rise to any lien thereon or to the sale, conveyance, or lease thereof and, on demand, to any representative of Owner.

10.   INSURANCE:

(a)   Charterer shall, without cost to Owner, keep the Vessel insured against such risks and in such form and in such amounts as Owner shall reasonably request, provided that such insurance on the Vessel shall in no event be less than the replacement hull value of said Vessel ($600,000.00) and to maintain with respect to the Vessel Protection Indemnity Risk Insurance against such risks and in an amount not less than $1,000,000.00 per occurrence with excess insurance no less than $5,000,000.00 per occurrence. All policies of insurance shall provide that there shall be no recourse against the Owner for the payment of premiums and commissions. As to any such policy which provides for the payment of Club calls, assessments or advancements, not only shall there be no recourse against Owner for the payment thereof, but at least thirty (30) days prior notice shall be given to Owner by underwriters in the event of any actual or proposed cancellation or reduction of coverage or any material change in the provisions thereof. Owner shall be named as an additional insured or loss payee thereunder, as their respective interests shall appear on any hull and P & I insurance policy.

(b)   Charterer shall carry such workmen's compensation insurance as shall be required under such applicable law.

Jul 18 03 05:08p        coastal marine              713 532 2618              p.5

(c)   Charterer shall deliver to Owner a certified true copy of all policies evidencing insurance maintained under this charter, provided that original policies shall be made available to Owner for examination promptly upon written request.

(d)   Charterer will not do any act nor suffer any act to be done, whereby any insurance required herein shall or may be suspended, impaired or defeated, and will not suffer for the Vessel to carry cargo or passengers not permitted, or to be operated in any geographical area where it would not be covered under the insurance policies in effect without first covering such Vessel with insurance complying with the provisions of this section.

11.   LOSS, REQUISITION OR DAMAGE:

(a)   In the event of damage to the Vessel to an extent which in the charter's and Owner's opinion makes repair thereof inadvisable, Charterer, by written notice to the Owner given within 30 days after the occurrence of the damage, may declare such Vessel a constructive total loss, and the Vessel may be declared an arranged total loss by agreement between the parties and the insurers. In such event, Owners shall be entitled to the remaining unpaid charter hire for the term of this charter, which Charterer shall be obliged to pay the Owner. Charterer shall be given credit for any hull insurance paid to Owner.

(b)   In the event of damage to the vessel short of actual, constructive, or arranged total loss thereof, Charterer shall arrange for the repair of such damage and shall pay the costs thereof and all other expenses incidental thereto; provided the Charterer shall be entitled to reimbursement to the extent of any proceeds of the hull insurance received by Owner on account of such damage. Charterer shall continue to make or cause to be made all charter hire payments provided for in this charter during the period of such repair.

(c)   In the event of government requisition, confiscation or seizure of the Vessel, this charter shall not be terminated and Charterer shall continue to make or cause to be made all payments provided for herein without interruption or abatement.

12.   INDEMNIFICATION:

(a)   Charterer at its expense shall protect, save harmless and indemnify Owner from and against any lien of any nature on the Vessel, any claim of any nature founded or unfounded by any third party (including, without limitation, any claim for salvage, crew wages, personal injury, necessaries, any tax, assessment, excess, levy, duty, fee or other governmental charge) and any fine or penalty arising from any violation of any law, treaty, convention, rule

or regulation, if such lien, claim, fine or penalty arises from any violation of any law, treaty, convention, rule or regulation, if such lien, claim, fine or penalty arises from the Ownership, use operation or maintenance of the Vessel during the charter period.

(b)    Any suit that is filed against the Vessel, or if the Vessel shall be otherwise attached or levied upon or taken into custody or detained by virtue of any proceeding in any court or tribunal or by any government or other authority or otherwise, Charterer shall forthwith notify Owner by telegram, confirmed by letter, and at Charterer's expense within twenty days thereafter, shall cause such Vessel to be released of any lien asserted thereon in connection with such libel or other action to be discharged as provided.

13.    DEFAULT, RETAKING.  If Charterer shall fail to pay any charter hire for more than five (5) days after the date payment is due, or fail to perform or comply with any provision of this charter or fail to perform or comply with any other provisions of this charter for more than seven (7) days after written notice of default given by Owner, Owner may, at its option withdraw the Vessel from the service of the Charterer and terminate this charter by giving written notice to the Charterer, without prejudice to any claim for damage suffered or to be suffered by reason of Charterer's default which Owner might otherwise have had against Charterer in the absence of any such withdrawal, and, upon giving such notice or at any time thereafter, Owner may retake the Vessel, wherever found, without prior demand and without legal process, and for that purpose may enter upon any dock, pier or other premises where the vessel may be for purposes of taking possession thereof.

14.    REDELIVERY.  At the expiration of the charter period, unless Charterer elects to exercise the purchase option contained herein, Charterer shall redeliver said vessel to National Liquidators in the highest class for vessels of her age and type with no requirements or recommendations of any governmental authority or insurance underwriter having been unfulfilled; and with all required certificates in effect. Redelivery shall be at Charterer's expense with Charterer giving notice of said redelivery to Owner.

15.    ASSIGNMENTS: This charter may not be assigned by Charterer without the consent, said consent by Owner not to be unreasonably withheld.

16.    OPTION TO PURCHASE: Upon payment of all charter hire and monies due under this Charter Party, or at the conclusion of the Charter Party, provided the Charterer is not in default and has made all required payments, Charterer has the option to purchase the vessel and all appurtenances, fixtures and equipment thereon, for the sum of $ 25,000⁰⁰ .  If this option to purchase is exercised, Owner shall provide Charterer with a documented Bill of Sale for the vessel and her equipment.

17.    NOTICES: All notices and other communications under this Charter shall be in

writing and shall be mailed by first-class registered or certified mail, postage prepaid, addressed as follows:

If to Owner:        Randall Bone
                    The Simmons Firm
                    301 Evans Avenue
                    Suite 300
                    Wood River, Illinois 62095


If to Charterer:    American Fleet Leasing Incorporated
                    541 Peter Paul Drive
                    W. Islip, NY 11717

18.   WAIVER, ETC.: No waiver by Charterer or by Owner of any one covenant or condition of this Charter shall be construed as a waiver of any other covenant or condition; nor shall a waiver of any one breach hereof be construed as a waiver of any other or subsequent breach. Neither this charter nor any term or provision hereof may be changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the party or parties against which enforcement of the change, waiver, discharge or termination is sought.

19.   LAW GOVERNING. This Charter Party shall be governed by the general and statutory admiralty law of the United States and/or the Law of the State of Florida, as same may apply.

20.   NO PERSONAL CONTRACT: This charter is not a personal contract. Owner shall have the benefit of all limitations and exemptions from all liabilities accruing to the Owner of the Vessel by any statute or rule of law for the time being in force, and Charterer shall have the benefit of all limitations of and exemptions from liability accruing to charter Owners or Charterers of the Vessel by any statute or rule of law for the time being in force; provided, however, that such limitations of and exemptions from liability shall not in any way affect the obligations of Charterer to Owner.

21.   LEGAL FEES: The Charterer is to pay all legal fees incurred by the Owner in connection with the execution and preparation of this Charter and any documents associated therewith. Should Charterer elect to purchase the vessel, Charterer shall pay all legal fees and closing costs. Should it be necessary for Owner to retain the service of an attorney in connection with the enforcement of the terms and provisions of this charter, Charterer agrees to pay Owner's attorney fees and legal costs so incurred.

22.   HEADINGS: The headings in this charter are for the purpose of reference only and shall in no way limit or affect any of the terms or provisions hereof.

08-18-03   11:08   From-LANE REESE AULICK SUMMER FIELD PA      3054445504        T-108   P.08/12   F-280

coastal marine                        713 532 2618                     P.8

JUL-18-2003  08:44AM   FROM-                                    T-768   P.008/010   F-873

23.   COUNTERPARTS: This charter may be executed in any number of counterparts, each of which shall be deemed as an original, all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this charter to be executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

WITNESS _____        Owner _____ Trustee
                                   By

WITNESS _____

WITNESS _____

WITNESS _____        Charterer _____
                                   By: Albert S. Logano D.S.

                                   ATTEST: Albert S. Logano, Soc

If Charterer is to be a corporation then the execution by Charterer shall be attested by Secretary and a Resolution authorizing the charter shall be attached.

## ADDENDUM TO BAREBOAT CHARTER PARTY AND OPTION TO PURCHASE

This is addendum to the Bareboat Charter Party, dated as of the 30th day of July, 2003.

A.    The Charter hire shall be amended to commence as of April 12, 2005 and shall continue monthly until November 30, 2005. The Charterer shall pay to the owner on or before April 13, 2005 the sum of $75,000.00, partially as past Charter hire and partially as consideration for this addendum. Receipt of the consideration is acknowledged by the owners.

B.    Commencing on or before May 31, 2005, the Charter shall pay as charter hire $18,500.00 for each month of the charter hire, the last payment being due on or before October 31, 2005.

C.    This addendum modifies paragraph 16 "Option to Purchase", and the purchase price shall be changed from $25,000.00 to $15,000.00.

D.    The undersigned, Albert S. Lagano and Thomas O'Donnell, jointly and severally, hereby personally guarantee all of the payments due under this Addendum to Bareboat Charter Party and Option to Purchase.

E.    Coin Castle Casino Lines, Inc. will be co-charterer with American Fleet Lease, Inc.

F.    Charterers are responsible for all of National Liquidators, Inc. charges incurred up until April 13, 2005.


Albert S. Lagano, individually and
as President of American Eagle
Fleet Lease, Inc.

Thomas O'Donnell, individually
and as Vice President of
Coin Castle Casino Lines, Inc.


Randall Borb, by George Mitchell
his attorney.

PLAINTIFF'S
EXHIBIT
B-1

<u>INDIVIDUAL GUARANTY</u>

I, ALBERT LAGANO, for value received, do hereby individually and unconditionally guaranty to RANDALL A. BONO, Trustee UA dated May 8, 1995, of the City of Wood River, County of Madison, State of Illinois, the performance of the Charterer, American Fleet Leasing Incorporated, including the payment of all charter hire, under that Charter Party entered into between American Fleet Leasing Incorporated, the Charterer, and RANDALL A. BONO, Trustee UA dated May 8, 1995, owner, dated the _____ day of _____, 2003, for the Charter of the M/V Lady Luck.

I expressly waive diligence on the part of RANDALL A. BONO, Trustee UA in the collection of any indebtedness and expressly agree that the owner of said vessel may call upon this Guaranty without first taking action or making demand of the Charterer; without furnishing the Charterer or myself formal notice of default or demand that said default be cured. All that is required is that the Charterer be in default and that the default has not been timely cured as provided by the Charter. Specifically, I expressly waive notice of nonpayment and/or non-performance, protest and notice of protest. I acknowledge that this Guaranty is in effect and binding on myself without reference to the existence of any other Guaranty, executed by any other person or persons. Further, I agree that the Guaranty shall continue in full force and affect notwithstanding the death or the release by agreement or by operation of law of, or the extension of time to any other Guarantor(s) as to obligations then existing.

To the extent that it becomes necessary to take legal action upon this Guaranty, I agree to venue and jurisdiction in the United States District Courts for the Southern District of Florida, or to the Eleventh Judicial Circuit in and for Miami Dade County, Florida. The law of the State of Florida shall apply.

I further waive formal service of process and agree that jurisdiction over my person may be obtained through service by registered mail to the address set forth below:

541 Peter Paul Drive
W. Islip, N.Y. 11717

or by facsimile transmission to the following number: (631) 419-0707

Should it be necessary for the vessel owner to hire the services of an attorney in order to make demand and/or enforce the terms of this unconditional guaranty given by myself, I agree to pay the vessel owner's attorneys fees and costs so incurred.

WITNESS

WITNESS

GUARANTOR:

By: ALBERT LAGANO

**EXHIBIT**

C

04/28/2013 00:20 FAX          6312441571                                              004
07/28/2003  14:29   6312441571                   AMERICAN EAGLE TITLE        PAGE   10
  Jul 18 03 05:09p        coastal marine            713 532 2618              P.10

  JUL-18-2009  08:45AM  FROM-                              T-762  P.010/010  F-873

## INDIVIDUAL GUARANTEE

I, GARY SMITH, for value received, do hereby individually and unconditionally guaranty to RANDALL A. BONO, Trustee UA dated May 8, 1995, of the City of Wood River, County of Madison, State of Illinois, the performance of the Charterer, American Fleet Leasing Incorporated, including the payment of all charter hire, under that Charter Party entered into between American Fleet Leasing Incorporated, the Charterer, and RANDALL A. BONO, Trustee UA dated May 8, 1995, owner, dated the 25 day of JUNA , 2003, for the Charter of the M/V Lady Luck.

I expressly waive diligence on the part of RANDALL A. BONO, Trustee UA in the collection of any indebtedness and expressly agree that the owner of said vessel may call upon this Guaranty without first taking action or making demand of the Charterer, without furnishing the Charterer or myself formal notice of default or demand that said default be cured. All that is required is that the Charterer be in default and that the default has not been timely cured as provided by the Charter.  Specifically, I expressly waive notice of nonpayment and/or non-performance, protest and notice of protest. I acknowledge that this Guaranty is in effect and binding on myself without reference to the existence of any other Guaranty, executed by any other person or persons. Further, I agree that the Guaranty shall continue in full force and effect notwithstanding the death or the release by agreement or by operation of law of, or the extension of time to any other Guarantor(s) as to obligations then existing.

To the extent that it becomes necessary to take legal action upon this Guaranty, I agree to venue and jurisdiction in the United States District Courts for the Southern District of Florida, or to the Eleventh Judicial Circuit, in and for Miami Dade County, Florida. The law of the State of Florida shall apply.

I further waive formal service of process and agree that jurisdiction over my person may be obtained through service by registered mail to the address set forth below:

    541 Peter Paul Drive
    W. Islip, N.Y. 11717

or by facsimile transmission to the following number: (631) 419-0707

Should it be necessary for the vessel owner to hire the services of an attorney in order to make demand and/or enforce the terms of this unconditional guaranty given by myself, I agree to pay the vessel owner's attorneys fees and costs so incurred.

                                        GUARANTOR:
_____                     By: GARY SMITH
WITNESS

_____
WITNESS

**EXHIBIT**

D

%JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

*07-60181*
*CIV-COHN*

## I. (a) PLAINTIFFS
Randall A. Bono, Trustee U/A dated May 8, 1995

## DEFENDANTS
AMERICAN EAGLE FLEET LEASING, INC., AMERICAN FLEET LEASING, INC., COIN CASTLE CASINO LINES, INC.

**(b)** County of Residence of First Listed Plaintiff *Manatee County*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Brevard County, FL
(IN U.S. PLAINTIFF CASES ONLY)

*MAGISTRATE JUDGE*
*SNOW*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John J. Cavo
George O Mitchell
Lane, Reese, Aulick, Summers & Ennis, P.A., 2600 Douglas Rd., Ste. 304, Coral Gables, FL 33134

Attorneys (If Known)

*0:07 CV 60181 JIC/LSS*

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

FILED by ___ D.C.
INTAKE
FEB 19 2007

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Re-filed— (see VI below)

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE                              DOCKET NUMBER

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. s. 1333 (2006) This is an action for a breach of a Charter Agreement and against the sureties of such agreement.

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   1/31/07

FOR OFFICE USE ONLY

AMOUNT  350.00  RECEIPT # 53937    IFP